**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Naomi Garcia,

Plaintiff,

v.

Chandler-Gilbert Community College, *et al.*,

Defendants.

No. CV-22-02169-PHX-JJT

**ORDER**

At issue is Plaintiff Naomi Garcia's Motion to Alter or Amend the Judgment (Doc. 101, Mot.), to which Defendant Maricopa County Community College District responds (Doc 111, Resp.), and Plaintiff replies (Doc. 112, Reply). Plaintiff requests oral argument, but the Court finds the matter appropriate for disposition without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument"). For the reasons set forth below, the Court denies Plaintiff's Motion to Alter or Amend the Judgment.

## I. BACKGROUND

For a more detailed factual overview, the Court refers the reader to the Background section of its previous Order granting Defendant's Motion for Summary Judgment. (Doc. 98, Order.) Facts particularly relevant to the instant Motion will be discussed *infra* as they arise.

At a high level, the Court determined the following. On Count I, the race discrimination claim, the Court concluded Plaintiff met her burden on the first three *prima facie* elements (member of a protected class, adequate job performance, and adverse

action). At the fourth element, however, Plaintiff failed (treatment of similarly situated individuals). (Order at 11–16.) On Count II, the retaliation claim, the Court found Plaintiff satisfied all three *prima facie* elements (protected activity, adverse employment action, and causation), Defendant then rebutted by showing a legitimate, non-retaliatory reason for Plaintiff's non-renewal, and Plaintiff failed to make an adequate pretext showing. (Order 16–25.) As a result, the Court entered judgment on both counts for Defendant, and closed the case. Pursuant to Rule 59(e), Plaintiff then timely filed the instant Motion to Alter or Amend the Judgment. (Mot. at 2.)

## II. LEGAL STANDARD

Rule 59(e) enables courts to amend after entry of judgment. *See* Fed. R. Civ. P. 59(e). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)). The Ninth Circuit has enumerated several grounds on which a Rule 59(e) motion may be granted:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Id.* There may also be "other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Importantly, however, Rule 59(e) does not permit parties to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (citation omitted). This prohibition flows from the "interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A]mending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'" *Allstate Ins. Co.*, 634 F.3d at 1111 (citation omitted).

. . .

## III. ANALYSIS

Plaintiff argues the Court committed clear error in entering judgment for Defendant on both counts. (Mot. at 2.) On Count I, the racial discrimination claim, Plaintiff points to four such errors: (i) the Court overlooked evidence showing other analysts had Plaintiff's same performance issues yet were retained; (ii) the Court failed to apply the "truncated" methods for showing the fourth *prima facie* element; (iii) the Court erred in considering racial stereotype evidence as a legal conclusion rather than a factual one; and (iv) the Court failed to consider, as circumstantial evidence, that Plaintiff was the only Black person in her department. On Count II, which Plaintiff sequences first in her Motion, Plaintiff avers four more errors: (i) the Court acknowledged a genuine dispute of material fact in one stage of the analysis, then resolved it in another; (ii) the Court failed to consider Defendant's own Equal Employment Opportunity Commission (EEOC) position statement in addressing the consistency of Defendant's stated reasons for non-renewal; (iii) the Court failed to address additional testimony in the record; and (iv) the Court's pretext analysis failed to consider evidence contradicting the Court's determination. Upon such claims, Plaintiff requests that the Court vacate its Order regarding Count I and/or Count II and reinstate the proceedings. In the alternative, Plaintiff requests supplemental briefing limited to the issues raised or that the Court certify the Retaliation claim's pretext issue for interlocutory appeal. (Mot. at 16–17.) The Court will address each of Plaintiff's arguments in the order presented.[1]

### A. Count II, Retaliation Claim

#### *1. The contradictory conclusions*

Plaintiff asserts the Court erred in declaring a genuine dispute of material fact in one stage of its analysis, then resolving it in another. (Mot. at 7–9.) Specifically, Plaintiff points to the causation analysis (the third of three *prima facie* elements), where the Court found that a reasonable juror could conclude that Defendant was contemplating renewal at the January 17 meeting convened the day after Mses. Travis and Ramirez-Perez were notified

[1] As Defendant notes in Response, Plaintiff's Motion does not raise new facts or law. (Resp. at 1–2.) As such, the Court reviews only for clear error.

of the Equal Employment Opportunity (EEO) complaint. The Court made this finding given Defendant's interest "in improving Plaintiff's relationship and communication with Ms. Travis." (Order at 20.) Plaintiff compares the finding with the Court's later pronouncement, at the pretext stage, indicating that it was "logical" Ms. Travis contemplated Plaintiff's non-renewal after January 16. (Order at 25.) Plaintiff essentially argues that these two items, held up next to each other, show the Court "recognized it could not resolve the timing dispute at summary judgment – and then proceeded to resolve it, by characterizing the post-complaint timing as 'logical.'" (Mot. at 8.)

The argument does not persuade. The Court agrees with Defendant's assertion that Plaintiff neglects to distinguish their burden at the distinct stages of a Title VII inquiry. (Resp. at 2.) As noted in the Order, the inquiry places only a "minimal" burden on plaintiffs at the *prima facie* stage of the analysis, *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), but later raises that burden, requiring circumstantial pretext evidence to be "specific and substantial," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). Stated differently, even if circumstantial evidence was "*sufficient* to demonstrate a *prima facie* case of retaliation," it "is ordinarily *insufficient* to satisfy the secondary burden to provide evidence of pretext." *Hooker v. Parker Hannifin Corp.*, 548 F. App'x 368, 370 (9th Cir. 2013) (emphasis added). The Court need not rehash a previous conclusion that expressly relied on this principle. (Order at 25 (citing *Hooker*, 548 F. App'x at 370).) Plaintiff may not relitigate old matters.[2] *Exxon Shipping Co.*, 554 U.S. at 485 n. 5.

*2. The EEOC position statement*

Plaintiff next attacks the Court's finding that the Defendant's given reason for the adverse action was legitimate (*i.e.*, not pretextual), specifically targeting the finding that "the record shows that Defendant's reasons for non-renewal have remained consistent over

[2] Plaintiff's citation to *Reeves* is unavailing. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). The *Reeves* Court wrote, "the trier of fact *may* still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Id.* (citation omitted) (emphasis added). The instructive is clearly permissive, and in any case the Court *did* consider such evidence.

time" and that Plaintiff proffered "no evidence" to the contrary. (Mot. at 10 (citing Order at 23); Reply at 6.) She contends this fails to consider the argument laid out in her Statement of Facts that "[n]owhere in this position statement does Dr. Hall even attempt to argue that the decision to terminate Ms. Garcia's employment was made prior to her filing of an EEO Complaint." (Mot. at 10 (citing ASOF ¶ 51; Ex. A to Cowan Decl.).) In Reply, she proffers more evidence, namely that the EEO investigation notes from an interview with a coworker, Mr. Wojtovich, show he "never witnessed her act insubordinately or combatively, that there were no prior issues with her performance, and that she was nominated as Rookie of the Year." (Reply at 6.)

None of these arguments move the needle. The Court agrees with Defendant that, on balance, Plaintiff raises evidence which again challenges the *timing* of the non-renewal decision, not the *reasons* for non-renewal. (Resp. at 4.) Though Plaintiff states in her paragraph header that she attacks the Court's consistency finding, the body of Plaintiff's argument undermines the point, as it instead repeatedly invokes timing: "the termination decision was somehow made in the fall," "prior to January 16, 2019 – [] a decision was made . . . not to retain Ms. Garcia," "no pre-complaint termination decision existed." (Mot. at 10.) The *timing* of a non-renewal decision is entirely distinct from the *reasons* for non-renewal, and the Court will not blur the two concepts together. Given the Court discussed her timing arguments *supra*, no additional discussion is required. Plaintiff may not relitigate old matters. *Exxon Shipping Co.*, 554 U.S. at 485 n. 5.

Even taking the argument as challenging consistency, however, her argument fails. Her primary contention is that Ms. Ramirez-Perez's testimony about the fall 2018 meeting regarding the decision to non-renew is contradicted by the *lack* of comparable testimony from Dr. Hall. (Mot. at 10.) Plaintiff argues Dr. Hall's silence serves as a party admission under the Federal Rules of Evidence, providing grounds for the Court to find a genuine dispute of material fact existed as to their non-renewal decision. (Mot. at 10.) But Plaintiff provides no authority for this novel, comparative admission theory predicated on one witness's silence. Nor does *Payne*—a case cited by Plaintiff as general support for the

pretext inference—provide cover. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997) (finding that suspicion of pretext is aroused when the "stated reasons" for an adverse action change "several times over a period of only a few months"). An oft-shifting rationale for an adverse action reasonably leads to the inference that defendant attempts to hide their racial biases. But that is simply not the case here. Defendant complained about Plaintiff's performance repeatedly and consistently. Their stated rationale never changed, and Dr. Hall's silence in the fall of 2018 does not vitiate the finding.

Plaintiff also argues that the Court failed to consider the Wojtovich evidence. But Plaintiff failed to present this evidence to the Court in opposition to the summary judgment motion. The Court therefore need not consider it. *Carmen v. S.F. Unified Sch. Dist.*, 236 F.3d 1026, 1029 (9th Cir. 2001). Even should the Court consider it, the argument is unavailing. Two of Mr. Wojtovich's three remarks speak to his faith in Plaintiff's performance. (Mot. at 10 (citing ASOF ¶ 51; Ex. A to Cowan Decl.).) All well and good, except that Mses. Travis and Ramirez-Perez decided not to renew Plaintiff's contract, not Mr. Wojtovich. That Wojtovich "never witnessed her act insubordinately or combatively," nor saw "prior issues with her performance," bears little on the impression of the decisionmakers. (Mot. at 10.) The third Wojtovich remark, that "[Plaintiff] was nominated as Rookie of the Year," gets Plaintiff closer to a pretext inference. (Mot. at 10.) If Mses. Travis or Ramirez-Perez gave Plaintiff the award, it becomes more likely Defendant's stated reasons are pretext because Defendant gave an award for good performance, then later claimed they had always found her performance deficient. But that's a big 'if.' In addition to presuming that Mses. Travis or Ramirez-Perez gave the award, the Court would also be required to presume the award was given within the timeframe at issue. The Court cannot so presume at this late stage in the case. The Court therefore finds no clear error.

*3. Additional pretext testimony & contradictory pretext evidence*

Plaintiff's third and fourth argument about the Court's Retaliation ruling both fail because she did not raise them earlier. *Exxon Shipping Co.*, 554 U.S. at 485 n. 5. Plaintiff's

third argument is that Dr. Hall was in the room for discussions about Plaintiff's non-renewal before January 16. (Mot. at 11 (citing Doc. 89 at 43, ¶¶ 52–53).) According to Plaintiff, because Dr. Hall had "no operational role in the non-retention process," his presence necessarily indicates the discussions regarding non-renewal were "intertwined with [Plaintiff]'s discrimination complaints." (Mot. at 11.) Plaintiff's fourth argument is that Mr. Wojtovich's eyewitness statements contradict the Court's finding that "no evidence existed that Defendant's stated reasons [for non-renewal] were false." (Mot. at 11.) Plaintiff cites to Dr. Hall's EEO investigation notes, whereby Mr. Wojtovich said Plaintiff was "professional and classy," that he "could not grasp why she was not-retained," that she was not "treated fairly," and that Ms. Travis was "lukewarm" about Plaintiff's ideas and disliked when staff "challenge[d] her authority or decision[s]." (Mot. at 11–12.)

None of these arguments were brought to the Court's attention at summary judgment; the Court therefore declines to review them now. Rule 59(e) exists for parties to challenge clearly erroneous decisions, not to flyspeck the record in search of contradictory facts after judgment is entered. To permit otherwise improperly shifts a litigant's burden to the courts, and confers windfall to the losing party, who can now adjust strategies with the benefit of hindsight, long after the buzzer has sounded. The Court finds no clear error.

**B. Count I, Racial Discrimination Claim**

*1. Evidence of the other analyst's performance*

Plaintiff contends the Court erred in failing to consider an email from Ms. Ramirez-Perez indicating that, alongside Plaintiff, "another colleague [did] not work[] at the same service standard as their colleagues," yet that non-black colleague was not terminated. (Mot. at 12 (citing Doc. 88 at 10; Doc. 88-2 at 34).) The Court, in its earlier order, did not discuss the email because it "could not locate that document at all." (Order at 13.) Plaintiff claims error because the Court's analysis at step four turned on the "insufficient evidence that other analysts were having similar performance issues." (Motion at 13 (citing Order at 12).) Had the Court considered the email, Plaintiff asserts, it would have found sufficient evidence existed. (Motion at 13 (citing Order at 12).) Defendant responds that Plaintiff

never cited the email as comparator evidence, only as evidence that "Ms. Travis *knew* of Plaintiff's hiring-process complaint earlier than January 16, 2019." (Resp. at 6 (emphasis original).)

The Court partially agrees with Plaintiff, in that the Court did not consider the email evidence.[3] And contrary to Defendant's argument, Plaintiff did argue, in response to the motion for summary judgment, that "Travis told superiors that another Analyst had 'performance' issues like Ms. Garcia, but no other Analyst was terminated or not retained." (Doc. 88 at 10.) The Court disagrees, however, that the lack of consideration of the email gives rise to manifest error. Although the email indicates that "[Plaintiff] and another colleague are not working at the same service standard as their colleagues" (Doc. 88-2 at 34), the lack of "service standard" is hardly why Defendant exercised non-renewal. As the email continues, *without* reference to the other employee, "[i]t is not only about the student scenario but [Plaintiff]'s behavior towards [Ms. Travis]," Plaintiff "continues to not respect [Ms. Travis] and dismiss her leadership," "to undermine [Ms. Travis] with office processes and protocols," and "to dismiss and treat [Ms. Travis] on kindly [sic]." (Doc. 88-2 at 34.) Similarly situated individuals are those who "have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), as amended (Jan. 2, 2004) (citing *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1997) ("Employees are similarly situated when they are involved in or accused of the *same offense* and are disciplined in different ways")). This email vaguely references another employee's poor 'service standard,' but it does not show they committed the "same offense." *Id.* Unlike the mystery employee, Plaintiff did not respect Ms. Travis, dismissed her leadership, and undermined her authority. Plaintiff's trailing argument fails for the same reason. That Plaintiff was the "only African-American supervised by Travis or Ramirez-Perez . . . ever not [] retained," provides this Court with no evidence that *similarly situated* employees were ever treated differently. (Mot. at 13.) The Court therefore finds

[3] It appears Plaintiff cited "Ex. C-2," a non-existent exhibit, when she likely intended to cite to "Ex. B-2," the exhibit containing the email at issue.

the neglected email at Ex. B-2 does not provide sufficient evidence to warrant the "extraordinary remedy" of an altered judgment. *Allstate Ins. Co.*, 634 F.3d at 1111.

*2. The "truncated" methods*

Plaintiff's next contention is that the Court cited the "truncated" methods but "did not apply them to the evidence in the record." (Mot. at 14.) Had the Court done so, Plaintiff argues, it would have found that the "Statement of Facts established that Travis directed Ms. Garcia to train new [] Analysts just days before her termination," a finding which therefore shows Defendant "continu[ed] to perform and expand on the plaintiff's duties." (Mot. at 14.)

Plaintiff misunderstands the point of the truncated methods. The "truncated version" of the fourth *prima facie* element permits a plaintiff to simply show that "the position ha[s] been filled by a person outside the protected class," rather than show that a "similarly situated [person was] treated more favorably." *Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025). In other words, the truncated test serves as a "catch-all requiring only that the adverse action 'occurred under circumstances giving rise to an inference of [] discrimination." *Id*. at 778 (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 104 (2d Cir. 1989)).

Here, the Court expressly found that "Plaintiff does not attempt to establish" that the truncated method applies. (Order at 12.) Indeed, in Plaintiff's response to the motion for summary judgment, she raised the fact of training only in the context of her performance and qualification (the second element), not in the context of the "circumstances giving rise to an inference of [] discrimination." *Lui*, 129 F.4th at 778; *see* Doc. 88 at 10. Hence, the sentence about training, read in its entirety, is clearly about Plaintiff's job performance (the second element) not similarly situated individuals (the fourth element): "For nearly two years, she had no documented performance concerns, was promoted into an Analyst role during [Defendant]'s busiest semester and was even asked to *train* other Analysts just days before the adverse action of termination on February 27, 2019." (Doc. 88 at 10 (emphasis original).) Plaintiff never raised the argument that she was replaced by the trainee, that the

training was for the purpose of supplementing or continuing her work, or that the trainee was even hired. And, if she had, the evidence to which Plaintiff points does not support any of those propositions, as it instead shows the trainee was not an analyst, but a "part-time advisor" who shadowed many employees in the department. (Doc. 88-2 at 70.) In short, Plaintiff cannot show the trainee (or Defendant) "continu[ed] to perform and expand on the plaintiff's duties." (Mot. at 14.)

To that extent, the Court sees no clear error in concluding Plaintiff failed to argue for the application of truncated methods. As discussed *supra*, Rule 59(e) does not permit a plaintiff to make arguments she previously neglected. *Kona Enters., Inc.*, 229 F.3d at 890 (9th Cir. 2000). Such permission would reduce finality to frivolity. And even if she had so argued, the evidence cannot revive her claim.

*3. The racial stereotype remarks*

Plaintiff's penultimate argument is that the Court's legal analysis at this step "itself drew an inference" in concluding that the race-neutral terms used to describe Plaintiff did not invoke the "angry black woman" stereotype, an inference which Plaintiff argues should have been left to the jury. (Mot. at 14–15.) The Court disagrees. It carefully reviewed caselaw in the area, found Plaintiff's challenged comments were indeed race-neutral, and then found that those comments were insufficient to independently establish her "minimal" burden of proof regarding discrimination. (Order at 13–16.) Plaintiff presents no caselaw showing the Court erred. Her cited cases are easily distinguishable (and were discussed in the Order). *See Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (finding "strong evidence of discriminatory animus" when employer referred to an employee as a "dumb Mexican"); *see also Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (finding discriminatory animus where employer "made his decision on the basis . . . that women do not make good leaders because they are too 'emotional'"). The Court therefore discerns that Plaintiff rehashes arguments already at rest. It declines to reopen the discussion.

. . .

*4. Plaintiff as the only African American person in the department*

Finally, Plaintiff asserts the Court erred in failing to address that Plaintiff was the "only African American analyst in her work area." (Mot. at 15 (citing Doc. 85-1 at 146).) Plaintiff claims this is "not merely background context," and instead is "itself part of the circumstantial mosaic that a jury evaluates in a discrimination case." (Mot. at 15.) The Court again sees no clear error. Instead, the Court detects, buried within the language of an unknown "mosaic standard," a request to reweigh evidence. (Reply at 10; Mot. at 15.) The Court is unaware of such a standard, Plaintiff cites no case for it, and to the extent Plaintiff asks to reweigh the circumstantial evidence, the Court declines. The Court finds no clear error.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion to Alter or Amend Judgment. (Doc. 101.) This matter remains closed.

**IT IS FURTHER ORDERED** directing the parties to refile their requests for, and potential objections to, the payment of costs within **twenty-one (21) days** of this Order.

Dated this 2nd day of November, 2026.

Honorable John J. Tuchi
United States District Judge